# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**GRAYBAR ELECTRIC COMPANY, INC.**                                      **PLAINTIFF**

v.                                                           **Civil Action No.: 1:23-cv-00366-TBM-RPM**

**CALGON CARBON CORPORATION**                                       **DEFENDANT**

## PLAINTIFF GRAYBAR ELECTRIC COMPANY'S RESPONSE IN OPPOSITION TO DEFENDANT CALGON CARBON CORPORATION'S MOTION TO DISMISS

Plaintiff Graybar Electric Company, Inc. ("Graybar"), by and through undersigned counsel, respectfully files this its Response in Opposition to Calgon Carbon Corporation's ("Calgon") Motion to Dismiss [Doc. 7] Graybar's Complaint [Doc. 1]:

## INTRODUCTION TO ARGUMENT

In its Motion to Dismiss, Calgon invites this Court to create new common law that simply does not exist, and to do so in a manner directly contrary to the purpose, intent, and language in our state's lien statutes which are to be strictly construed. Taken to its logical end, Calgon is asking this Court to declare what none other has done—that a subcontractor or supplier unpaid mid-project waives its future lien rights if it files a lien mid-project, or files a lien at any time before 270 days of when it *completes* supplying all materials or labor to a construction project (90 days to file lien, plus 180 days to file suit).

Here, the specific questions are whether Calgon has shown that a lien filed after the first lien is filed, *with a later completion date*, for different material, services, or labor, nevertheless requires the unpaid supplier to file suit within 180 days of its completion of *earlier*, *different* work, rather than 180 days after its post-lien work and extended completion date; and, if so, what affect is there when a bond is filed that presumably bonded off the first lien, but not the full amount of the debt? The answers are not nearly as simple or clear as Calgon would lead this Court to believe.

Calgon does not dispute that there is *nothing* in the Mississippi lien statutes that suggests, much less states, otherwise. There is nothing to say that an unpaid supplier cannot file a lien early, mid-project, or later to secure past due payments for materials supplied <u>up to that date</u>, <u>prior to completion</u>, and then continue to provide materials on the project without waiving its lien rights to future payments for post-lien work. Indeed, subcontractors and suppliers will often be contractually required to continue to supply materials and labor towards later milestones and project completion dates. Indeed, is there any real doubt that Calgon would not hesitate to file suit if its massive plant capacity expansion project (the "Project") in Pearlington, Hancock County, Mississippi, on the subject property owned by Calgon (the "Property"), was unduly delayed by subcontractors and suppliers leaving the Project for non-payment?

Calgon also does not dispute that there is *nothing* in the Mississippi lien statutes to suggest that an unpaid supplier or subcontractor that is paid in whole or in part for past due balances <u>early, mid-project, or later</u>, cannot later file a separate lien with <u>a new date</u>, post-lien, for materials last supplied or labor performed towards the project's completion. Though that is Calgon's assumption and the sole basis of Calgon's Motion to Dismiss, no other states have interpreted their lien laws in this matter, including Georgia from which this language is derived.[1]

The lien statutes are to be read as a whole, with meaning given to each part. The reasonable and complete interpretation of the "relation back" statutory language cited by Calgon is that the date is to relate back to an earlier lien <u>when the lienor's work is complete and final</u>. There is no

---

[1] This statutory language is borrowed directly from subsection (a.1) of Georgia Code Section 44-14-361.1. The laws of Georgia, Florida, and Alabama were used to draft Mississippi's lien law. Together with fellow construction lawyers Robert Wise and Trey Copeland, among others, Graybar's counsel Dorsey R. Carson, Jr. contributed to drafting Mississippi's lien statute. Likely because Georgia's period for filing suit is 365 days after lien filing (455 days total after last performance) rather than 180 days, there are not Georgia cases directly addressing this issue.

reason to assume that the Legislature intended on the language to apply when a subcontractor or supplier is continuing to provide labor or materials, post-lien. That should not be read into a statutory scheme whose sole purpose is to protect unpaid subcontractors and suppliers.

Indeed, any large construction project such as this is certain to last well over a year. In this case, the Project lasted three years. Yet, Calgon's theory would prevent any unpaid subcontractor and supplier from ever filing a lien early or mid-project, even if debts were rapidly accumulating and financially strapping suppliers and subcontractors. Calgon's position is exposed: If a prime contractor goes broke, so what? According to Calgon, it is not until the very end of a project that an unpaid supplier or subcontract can file a lien—even two or more years after the debts begin to accumulate and even when the credit limits have been exceeded. That is not consistent with established law.

It is worth nothing that Calgon does not dispute that Graybar made a momentous expenditure of time, materials and service that were incorporated into the Project. Indeed, as a subcontractor to Calgon's prime contractor O'Neal Constructors, LLC ("O'Neal"), Graybar supplied hundreds of thousands of dollars' worth of materials on the Project. Calgon does not dispute that the materials supplied by Graybar was needed on the Project, and that Graybar's supplied materials complied with Project specifications. The Project could not have been completed without the materials supplied by Graybar.

Calgon also does not dispute that Graybar's work (as well as those of other unpaid suppliers and subcontractors) *significantly* improved its existing plant on its Property. Nor can it. Calgon brags about the improvements to its Property. On October 13, 2023, for example, Calgon issued a press release announcing that it had completed the Project (or, more accurately, Calgon's contractor, subcontractors, and suppliers had completed the Project). Calgon recognized in its press

release that "[t]his expansion includes the addition of a second virgin activated carbon production line, resulting in a significant increase in production capacity." "With this expansion, Calgon Carbon, known as the world's largest manufacturer of activated carbon and reactivation services, will now produce more than 200 million pounds of virgin activated carbon per year."

Calgon does not dispute that Graybar has not been paid, even for the amounts that have been *undisputed* by Calgon and O'Neal, even though Calgon is "the world's largest manufacturer of activated carbon and reactivation services" that built its new plant expansion on the backs of unpaid subcontractors and suppliers. Calgon could easily pay for its new plant.[2] And, for good reason, the Mississippi lien law protects owners from paying more than the amount that they owe *and have paid* to their prime contractors. But Calgon does not contend that it has paid in full for its Plant.

This case present an *exact scenario* of why Mississippi has a lien law. A decade ago, after Mississippi's "stop notice" statutory scheme that protected unpaid subcontractors and suppliers was determined to be an unconstitutional taking without due process, Mississippi joined 49 other states and the District of Columbia in protecting unpaid subcontractors and suppliers through a new lien law. And for good reason. There is no construction project without materials and labor. There are no materials without suppliers. Suppliers must either be paid up front or risk non-payment. For those suppliers willing to extend credit, like Graybar, Mississippi endeavors to provide security for payment of those materials. This ultimately results in more credit being extended to Mississippi contractors and subcontractors than suppliers would normally provide.

---

[2] According to public records, Calgon Carbon's annual revenue in 2022 was $619.8 Million USD. Calgon Carbon has 1,400 employees, and the revenue per employee ratio is $442,722. Calgon is a wholly owned subsidiary of Kuraray Co., Ltd ("Kuraray"), a Japanese manufacturer of chemicals, fibers and other materials headquartered in Kurashiki, Okayama. Kuraray was founded in 1926 and has 11,219 employees as of December 31, 2020, when it reported annual revenue of roughly $6 Billion USD.

4

This results in a healthy climate for construction in our state. For that reason, Mississippi law permits an unpaid supplier like Graybar to file a lien that attaches to the owner's improved property. Graybar did just that.

**RELEVANT FACTUAL BACKGROUND**

In March 2023, Graybar filed a Notice of Claim of Special Lien (the "Bonded Lien") in the amount of $578,369.72. At the time Graybar filed the Bonded Lien, it was still providing labor and/or material on the Project. On ***May 31, 2023***, after the Bonded Lien was filed, Graybar sent O'Neal an invoice reflecting an additional amount of $180,990.65 owed to Graybar for additional work performed and/or materials provided on the Project, making the total outstanding principal amount $759,360.37. [Doc. 1-2].

A week later, on June 6, 2023, prior to the deadline for payment of the last invoice (thus too soon for Graybar to amend the Bonded Lien), O'Neal and its surety, Liberty Mutual, filed a Bond to Discharge and Release the Lien ("Bond") under Miss. Code Ann. § 85-7-415. [Doc. 1-3]. The Bond was only for $636,206.69 (the "Bonded Amount"), representing one hundred ten percent (110%) of the amount claimed under the Bonded Lien. The Bond was not for the total principal amount then due of $759,360.37. Calgon and O'Neal's actions in securing a Bond for less than the value of work and/or material supplied by Graybar to improve the Property have created a gap not contemplated nor addressed by Mississippi law. Yet Calgon now seeks to capitalize on this gap that it helped to create.

Further, though the Bond contained a space for the Hancock County Chancery Clerk to approve and discharge the Bonded Lien, the Bonded Lien was never discharged by the Chancery Clerk, which is ***required*** under Miss. Code Ann. § 85-7-415. Calgon did ***nothing*** to ensure that

5

the Bond provided by Liberty Mutual was approved by the Chancery Clerk, or that the Bond otherwise served to discharge the Bonded Lien.

To protect its lien rights to the full amount owed, on June 27, 2023, Graybar filed a new Notice of Claim of Special Lien ("Non-Bonded Lien") on the Property owned by Calgon in the total outstanding amount of $759,360.37. [Doc. 1-4]. By then, the date that Graybar last provided materials and labor was ***May 31, 2023***. Though the Non-Bonded Lien was inadvertently titled Notice of Amended Claim of Special Lien, it did not amend the Bonded Lien. This is evidenced by the text of the notice. The Non-Bonded Lien does not contain ***any*** language referencing the Bonded Lien, as ***required*** when amending a lien pursuant to Miss. Code Ann. § 85-7-405. Therefore, as a matter of law, the Non-Bonded Lien was (and is) a new lien, and not an amendment to an existing lien.

To preserve its rights, on September 14, 2023, within one hundred eighty (180) days of the filing of the Bonded Lien, Graybar filed suit in the Circuit Court of Hancock County, Civil Action No. 23-0149. The case was subsequently removed to federal court. ("*Graybar I*").

Graybar must reasonably work under the presumption that the Bond is valid or could be rendered effective by court order. Thus, after Graybar filed its first, *in personam* action in *Graybar I*, Graybar amended the Non-Bonded Lien, via a Notice of Amended Claim of Lien, and included the required language of Miss. Code Ann. § 85-7-415, to reflect the Non-Bonded Amount of $180,990.65. [Doc. 1-5].

Calgon now seeks to dismiss Graybar's Complaint alleging that Graybar's lien is invalid, and, therefore, unenforceable because the Bonded Lien was discharged. Calgon relies on the title of Graybar's Non-Bonded Lien, filed in June 2023, and wholly ignores the text of the actual Notice. Calgon's request is due to be denied for two main reasons. First, regardless of whether the

Bonded Lien has been discharged by the lien, the Non-Bonded Lien Graybar seeks to enforce in the instant matter is an entirely separate lien, with a later completion date, and for different material and/or services. Second, whether the Bonded Lien has been discharged will affect only the *amount* of the debt owed to Graybar that is to attach to Calgon's Property.

## ARGUMENT

I. **Motion to Dismiss Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the trial court is to accept all well-pleaded facts as true, view those facts in the light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *See Balle v. Nueces County*, 952 F.3d 552, 556 (5th Cir. 2017); *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016); *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013).

"Well-pleaded factual allegations may perfectly shield a complaint from dismissal under Rule 12(b)(6), and [the Fifth Circuit] inquiry's 'emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial.'" *Breton Energy, L.L.C. v. Mariner Energy Res., Inc.*, 764 F.3d 394 (5th Cir. 2014) (*quoting Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)).

Plaintiff's Complaint and the claims alleged therein are plausible, and well surpass the 12(b)(6) threshold.

II. **The Non-Bonded Lien is a separate, independent lien for Graybar's supply of *different* material/services than that contained in its Bonded Lien, with a *later* completion date, and which *could not* be filed until after the debt became *past due*, which was *after* Liberty Mutual filed its Bond.**

On June 27, 2023, Graybar filed a new, separate Notice of Claim of Special Lien (the "Non-Bonded Lien") on the Property owned by Calgon in the total outstanding principal amount of

$759,360.37. [Doc. 1-4]. The Non-Bonded Lien did not amend the Bonded Lien, though Calgon makes a lot of hay about the inadvertent inclusion of the word "Amended" in its title (though *only* in its title).

Miss. Code Ann. § 85-7-405 mandates the inclusion of certain language within the text of an amended lien claim. Specifically, Miss. Code Ann. § 85-7-405 provides:

> A claim of lien may be amended at any time to increase or reduce the amount claimed, and the amended claim of lien shall relate back to the date of filing for record of the original claim of lien. An amended claim of lien filed for record pursuant to this subsection shall be sent to the owner of the property in the same manner as required for a claim of lien in subsection (1)(b) of this section and shall be in substance as follows:

> "That certain claim of lien filed by A.B. against property of C.D. on (date) and recorded at book (book#), page (page#) in the lien index of (name of county) County is hereby amended by increasing/reducing (cross out one) the amount of the claim of lien to (specify reduced amount claimed). The remaining terms of the original claim of lien are hereby incorporated by reference into this amended claim of lien. This amended claim of lien relates back to the date that the original claim of lien was filed for record."

The Non-Bonded Lien does not contain any language referencing the Bonded Lien, as **required** when amending a lien pursuant to Miss. Code Ann. § 85-7-405. The Non-Bonded Lien is for different material/services supplied after the Bonded Lien was filed. It does not relate back to the Bonded Lien whatsoever.

As Calgon stated in its supporting memorandum, it is well-settled that strict compliance with the statutory lien provisions is required. *See* Miss. Code Ann. § 85-7-405(1) (Supp. 2020) ("[t]o make good a lien created in Section 85-7-403(1), it must be created and declared in accordance with the following provisions, and on failure of any of them the lien shall not be effective or enforceable...."). Graybar did not seek to amend the Bonded Lien when it filed its Non-Bonded Lien, evidenced by the text of the Non-Bonded Lien and the text of its actual amended lien claim.

As of December 13, 2023, Graybar continued to properly question whether the Bond was valid because the Chancery Clerk had not yet discharged the Bonded Lien. Though the undersigned has found no law to suggest that the Chancery Clerk cannot accept and discharge the Bonded Lien now, during litigation (or that the Court cannot do so, or instruct the Chancery Clerk to do so), that has not yet happened. Plaintiff cannot, and does not wish to, collect any more or less than what it is owed. Graybar must reasonably work under the presumption that the Bond is valid or could be rendered effective in the future by the Chancery Clerk or by court order. Thus, after Graybar filed its *in personam* action, *Graybar I*, Graybar amended the Non-Bonded Lien, via a Notice of Amended Claim of Special Lien, and included the required language of Miss. Code Ann. § 85-7-415, to reflect only the Non-Bonded Amount of $180,990.65. [Doc. 1-5].

Graybar's lien is not invalid. Graybar's Complaint is enforceable.

**III.     The Chancery Clerk never discharged the presumptively Bonded Lien.**

Graybar filed the Bonded Lien while Graybar was still providing services and material on the Project. After the Bonded Lien was filed, Graybar issued a final invoice to O'Neal in the amount of $180,990.65. Now, this nearly $200,000.00 owed to Graybar remains in limbo because of Calgon and O'Neal's refusal to secure a Bond for the total amount owed. Because Calgon and O'Neal secured a Bond for less than the value of material and services supplied by Graybar to improve Calgon's Property, a gap in coverage has been created. This is a gap that was not contemplated nor addressed by Mississippi law.

Since **no attempt** has been made by Calgon or O'Neal or Liberty Mutual to seek approval of the Bond by the Chancery Clerk, or to seek discharge of the Bonded Lien by the Chancery Clerk, or by any court, there is a lingering question about the validity of the Bond and the Bonded Lien.

Calgon adds in a footnote in its Memorandum that the Chancery Clerk's failure to sign the Bond is simply a "technical oversight that does not affect the fact that the [] Bond discharged" the Bonded Lien. Calgon adds no legal support for its footnote because no legal support exists. That's clearly not what Mississippi law says. Mississippi law states the exact opposite. It is difficult to see how Section 85-7-415 could be any clearer: "The bond … shall be either a cash bond or a bond with good security **approved** by the clerk of the chancery court and issued by any surety company authorized to do business in the State of Mississippi. **Upon approval** by the clerk of the bond, the real estate shall be discharged from the lien." Miss. Code Ann. § 85-7-415 (bold added). Calgon admits that the lien statutes must be strictly construed, but then asks this Court to ignore the statute and invite a clear error analysis on appeal. While we surmise that this Court ultimately has the authority to order the chancery clerk to approve the bond, that has not yet happened, and Calgon has never sought that relief.

To be clear, Graybar has not alleged, nor does it wish to allege, that the Bond is invalid. Calgon, O'Neal, and Liberty Mutual caused this dilemma, and now all seek to gain from it. Graybar would just as soon have Liberty Mutual honor its word and be on the hook for the full Bond amount that it willingly and knowingly issued, and for which Liberty Mutual happily received payment. But the chancery clerk has not yet approved or discharged the Bonded Lien. Under this set of facts, the law is not clear as to the state of the Bond or the Bonded Lien.

Regardless, a determination of the Bond's validity *only* affects the *amount* of the debt that is due to be attached *in rem* to Calgon's Property. Despite citing Section 85-7-415, and presumably knowing its unambiguous language, Calgon's Motion to Dismiss does nothing to address the validity of the Bond. Rather, Calgon asks this Court to *assume* for purposes of its Rule 12(b)(6) Motion to Dismiss that the Bond is valid, as Calgon has done. Why should this Court assume

something that is directly contrary to the unambiguous statutory language? There is no good reason for this Court to follow Calgon's broken path. Nor is there any reason for this Court to follow Calgon's assumptions, including that an unpaid supplier or subcontractor cannot file a lien early, mid, or late-project without waiving its right to a later lien for materials, labor, and/or services that it continues to provide *post-lien*. On that point and the others noted, Calgon fails.

Calgon's Motion to Dismiss ultimately relies on false assumptions. Calgon has not even begun to meet its burden under Rule 12(b)(6). For these reasons, Calgon's Motion to Dismiss under Rule 12(b)(6) is due to be denied.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Graybar Electric Company, Inc. respectfully moves the Court to deny Defendant Calgon Carbon Corporation's Motion to Dismiss Plaintiff's Complaint, and for such further relief as the Court deems proper.

Respectfully submitted, this 7th day of February 2024.

/s/Dorsey R. Carson, Jr.
Dorsey R. Carson, Jr. (MSB #10493)
Kathryn P. Goff (MSB #105678)
Harli M. Sesser (MSB #106520)
*Attorneys for Plaintiff*

**OF COUNSEL:**

CARSON LAW GROUP, PLLC
125 South Congress Street, Suite 1336
Jackson, Mississippi 39201
Telephone: 601-351-9831
Facsimile: 601-510-9056
dcarson@thecarsonlawgroup.com
kgoff@thecarsonlawgroup.com
hsesser@thecarsonlawgroup.com

## CERTIFICATE OF SERVICE

I, Dorsey R. Carson, Jr. do hereby certify that I have on this day filed the above-styled document electronically with the Clerk of Court, which constitutes service by Notice of Electronic Case Filing upon participants registered in this case with ECF.

This, the 7th day of February 2024.

*/s/Dorsey R. Carson, Jr.*
OF COUNSEL
